UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

AMY S.[1], )
 )
      Plaintiff, )
 )
v. ) Case No. 2:18-cv-331
 )
ANDREW M. SAUL, )
Commissioner of Social Security, )
 )
      Defendant. )

## OPINION AND ORDER

      This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Amy S., on September 6, 2018. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

      The plaintiff, Amy S., filed an application for Supplemental Security Income on May 8, 2015, alleging a disability onset date of May 6, 2015. (Tr. 18). The Disability Determination Bureau denied Amy S.'s application initially on July 23, 2015, and again upon reconsideration on September 11, 2015. (Tr. 18). Amy S. subsequently filed a timely request for a hearing on November 6, 2015. (Tr. 18). Amy S. failed to attend the initial hearing scheduled for January 17, 2017. (Tr. 18). After a Notice to Show Cause was sent to Amy S. and she responded, another hearing was scheduled. (Tr. 18). A video hearing was held on June 16, 2017, before Administrative Law Judge (ALJ) Diane S. Davis, and the ALJ issued an unfavorable decision on November 9, 2017. (Tr. 18-35). Vocational Expert (VE) Pamela Tucker appeared at the hearing. (Tr. 18). The Appeals Council denied review making the ALJ's decision the final

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

decision of the Commissioner. (Tr. 1-3).

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Amy S. had not engaged in substantial gainful activity since May 8, 2015, her application date. (Tr. 20).

At step two, the ALJ determined that Amy S. had the following severe impairments: lumbar spondylosis, psychogenic non-epileptic seizure disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder. (Tr. 21). The ALJ found that the above medically determinable impairments significantly limited Amy S.'s ability to perform basic work activities. (Tr. 21). Amy S. also alleged disability due to May-Thurner syndrome, insomnia, and rheumatoid arthritis. (Tr. 21). However, the ALJ found that Amy S.'s May-Thurner syndrome and insomnia caused no more than a minimal limitation on her ability to engage in basic work activities and were non-severe impairments. (Tr. 21-22). Furthermore, the ALJ determined that Amy S.'s rheumatoid arthritis was not a medically determinable impairment. (Tr. 22).

At step three, the ALJ concluded that Amy S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 23). The ALJ stated that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 23). The ALJ considered Amy S.'s mental impairments, singly and in combination, against the criteria in listings 12.02, 12.06, 12.07, and 12.15. (Tr. 23). In making this finding, the ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing themselves.

(Tr. 23). The ALJ indicated that a marked limitation means the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited, while an extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 23).

The ALJ determined that Amy S. had moderate limitations in understanding, remembering, or applying information; a moderate limitation in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself. (Tr. 23-24). Because Amy S.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria was not satisfied. (Tr. 25). Additionally, the ALJ determined that Amy S. did not satisfy the paragraph C criteria. (Tr. 25).

After consideration of the entire record, the ALJ then assessed Amy S.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform LIGHT work as defined in 20 CFR 416.967(b). The claimant can lift and/or carry 20 pounds occasionally and ten pounds frequently. She can sit for about six hours total in an eight-hour workday. She can never climb ladders, ropes, and scaffolds, or work at unprotected heights. She should also avoid exposure to dangerous moving machinery. The claimant can understand, remember, and carry out simple, routine tasks, make simple, work-related decisions, and adapt to routine workplace changes. She can work in proximity to others and tolerate occasional interaction with supervisors and coworkers, and brief, incidental contact with the public. She can persist in such activities, with adequate pace and perseverance.

(Tr. 25). The ALJ explained that in considering Amy S.'s symptoms she followed a two-step process. (Tr. 26). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Amy S.'s pain or other

3

symptoms. (Tr. 26). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Amy S.'s functioning. (Tr. 26).

After considering the evidence, the ALJ found that Amy S.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 26). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 26-27). The ALJ assigned some weight to the state physical evaluators, little weight to the state psychological evaluators, little weight to the treating neurologist, Dr. Julian Ungar-Sargon, and little weight to the third-party reports of her mother (Kathleen Mears), her best friend (Christine Yarchan), and Reverend Frederic Lams. (Tr. 30-33). The ALJ assigned no weight to the opinion of Shiree Anderson, the office manager at NWI Medical Consultants. (Tr. 32).

At step four, the ALJ found that Amy S. was unable to perform any past relevant work. (Tr. 33). Considering Amy S.'s age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that she could perform, including inspector and hand packager (28,000 jobs nationally), laundry worker (95,000 jobs nationally), and label coder (30,000 jobs nationally). (Tr. 34). The ALJ found that Amy S. has not been under a disability, as defined in the Social Security Act, since May 8, 2015, the date the application was filed. (Tr. 35).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of

Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly

5

limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f)**; *see Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Amy S. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings. In her appeal, Amy S. has argued that the ALJ's RFC was not based upon substantial evidence.

Amy S. contends that the ALJ's RFC finding was not supported by substantial evidence because the ALJ failed to properly account for her mental and physical limitations in the RFC and did not properly consider her subjective allegations pursuant to SSR 16-3p. "The RFC is an

assessment of what work-related activities the claimant can perform despite his limitations."

*Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 416.945(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 416.945(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented,

7

but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Amy S. has argued that the ALJ did not properly assess the RFC with regards to her physical impairments. The ALJ found that Amy S. could perform light work with some exceptions: she never should climb ladders, ropes, and scaffolds or work at unprotected heights; and she also should avoid exposure to dangerous moving machinery. The ALJ made the following additional findings: she could understand, remember, and carry out simple, routine tasks, make simple, work-related decisions, and adapt to routine workplace changes; she could work in proximity to others and tolerate occasional interaction with supervisors and coworkers, and brief, incidental contact with the public; and she could persist in such activities with adequate pace and perseverance. (Tr. 25). The ALJ stated that the RFC decision was supported by the record as a whole, including "the findings from diagnostic testing, particularly the results of multiple electroencephalographies; the objective findings from medical appointments … and the claimant's functional abilities, as demonstrated in the four areas of mental functioning." (Tr. 33). Amy S. contends that the ALJ failed to properly consider her seizures and the resulting limitations caused by her seizures. Amy S. also has argued that the ALJ mischaracterized her

8

psychogenic seizures.

The ALJ found that Amy S. suffered from the severe impairment of non-epileptic psychogenic seizure disorder. (Tr. 21). Amy S. testified to having daily seizures, including three the morning of her hearing. (Tr. 78). The medical record lists multiple instances of reported seizures, averaging three a day. (Tr. 466, 473, 475, 476, 495, 498, 500, 1181, 1185, 1187, 1192, 1195, 1200, 1201, 1206, 1492, 1495, 1498, 1504, 1510). The ALJ failed to discuss the frequency of Amy S.'s seizures as required when a claimant suffers from a seizure disorder. ***Boiles v. Barnhart***, 395 F.3d 421, 427 (7th Cir. 2005); ***Barnett v. Barnhart***, 381 F.3d 664, 670 (7th Cir. 2004). The ALJ only noted that "there is little objective documentation to support her assertion at the hearing that she was experiencing daily seizures." (Tr. 29). However, the ALJ failed to consider that psychogenic seizures do not show up on objective testing such as an EEG, CT, or MRI. *See **Boiles**,* 395 F.3d at 424 (Stating that psychogenic seizures do not show up on EEGs and cannot be treated by anti-seizure medication and therefore do not benefit by frequenting the hospital for seizure treatment). The ALJ's requirement of using objective evidence to reject Amy S.'s report of daily psychogenic seizures fails when her seizures cannot be proven by objective medical evidence. There is no other discussion of the frequency of Amy S.'s seizures as required by case law.

Furthermore, the ALJ failed to consider that lights and stress triggered Amy S.'s psychogenic seizures. (Tr. 81). Even simply being in the presence of people arguing could trigger a seizure. (Tr. 81). Amy S.'s triggers may have required further limitations in the RFC, but without any discussion in the ALJ's decision, the court cannot provide a meaningful review. Similarly, the ALJ failed to discuss how long it took Amy S. to recover from seizures, as well as the symptoms she experienced following a seizure. Amy S. experienced memory loss,

9

confusion, sleepiness, headaches, and extreme light sensitivity following her seizures. (Tr. 81-82, 1516). Without adequate discussion of Amy S.'s post-seizure symptoms, the court cannot conduct a meaningful review or discern whether the ALJ actually considered Amy S.'s reported symptoms and limitations following her seizures.

Next, Amy S. has argued that the ALJ erred in the analysis of her subjective symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue**, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons that are supported by the record. **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the claimant's daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of medications, and any other measures the claimant takes to relieve symptoms. *See* **20 C.F.R. § 416.929(c)(3)(i)-(vi).**

The Seventh Circuit repeatedly has emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g.,* **Bjornson v. Astrue**, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons … and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); **Punzio v. Astrue**, 630 F.3d 704, 712 (7th Cir. 2011) ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); **Mendez v. Barnhart**, 439 F.3d 360, 362 (7th Cir. 2006)

("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home … The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment … often differ dramatically between home and office or factory or other place of paid work.").

The ALJ stated that Amy S.'s medically determinable impairments reasonably could be expected to cause the alleged symptoms, "however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." (Tr. 26-27). The ALJ then discussed that Amy S. received conservative treatment for her mental health impairments and failed to engage "in any type of therapy, which could address … the psychogenic, non-epileptic seizures she reports experiencing." (Tr. 29). The ALJ also discussed Amy S.'s daily activities and found that "they are not limited to the extent one would expect if her mental impairments were as severe as alleged." (Tr. 29).

The ALJ then found that Amy S.'s daily activities and ability to interact appropriately with her friends and family "indicates that she has been capable of sustaining some level of work-related activities since her alleged onset date." (Tr. 29). The ALJ erred in relying on Amy S.'s daily activities to find that she was capable of sustaining "work-related activities." Moreover, the ALJ mischaracterized her daily activities to arrive at that conclusion. The ALJ relied on numerous daily activities to support her finding that Amy S. could perform work. However, much of this evidence was mischaracterized. The ALJ found that Amy S. could cook and prepare meals, yet she testified that she usually only prepared frozen meals and that she relied on a neighbor to cook meals for her. (Tr. 29, 74-75). The ALJ also stated that Amy S.

11

enjoyed fishing and still drove. Yet, she testified at the hearing that she no longer could go fishing due to her seizure disorder and that she no longer drove unless it was an emergency. (Tr. 29, 76, 82). The ALJ further stated that she still went out and attended church, but Amy S. testified that she only has been to church a few times in the past year and that she no longer goes out with any friends. (Tr. 29, 82). The ALJ further stated that she "enjoys watching TV," yet Amy S. testified that she does not watch TV and that she cannot read more than ten minutes at a time. (Tr. 29, 82). The ALJ mischaracterized large portions of Amy S.'s daily activities, and the ALJ may not mischaracterize evidence of a disability that contradicts the ALJ's ruling. *Golembiewski v. Barnhart*, 322 F.3d 912, 916-17 (7th Cir. 2003). This mischaracterization requires remand. The ALJ improperly relied on evidence of daily activities to find that Amy S. could maintain full-time employment.

Additionally, the ALJ erred in finding that Amy S.'s subjective symptoms were not credible based on her treatment history, or lack thereof. The ALJ noted that Amy S. did not engage in any type of therapy, which the ALJ speculated could address her psychogenic, non-epileptic seizures. (Tr. 29). While psychological therapy is the preferred course of treatment for psychogenic seizures, the ALJ failed to consider why Amy S. failed to continue the therapy that helped her from 2009 through 2014. (Tr. 26, 29). The ALJ noted that Amy S. ended treatment due to a lack of insurance coverage and that she was homeless for nearly two years starting in 2015. However, she failed to analyze how that impacted Amy S.'s ability to receive help for her psychogenic seizures. The ALJ instead found that she did not receive therapy despite being recommended for services, which the ALJ determined meant her seizures were not as severe as alleged. However, Amy S. regularly reported problems with insurance and an inability to pay for treatment. (Tr. 75-78). A claimant's inability to afford treatment or a lack of medical insurance

12

may excuse the claimant's failure to pursue treatment. *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). While the ALJ noted Amy S.'s inability to afford treatment, the ALJ failed to properly consider how that would impact Amy S.'s psychogenic seizures and held her inability to receive treatment against her. This was improper and requires remand.

Amy S. raises additional issues regarding her physical RFC and mental RFC. Because the ALJ erred in assessing Amy S.'s psychogenic seizures and in the subjective symptom determination, remand is appropriate. Proper analysis and discussion of Amy S.'s seizures and subjective symptoms may alter the rest of the ALJ's decision. Accordingly, the court need not address the other arguments. The RFC was not supported by substantial evidence and remand is appropriate.

Amy S. has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. *Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 30th day of December, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge